NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TIMOTHY J.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-18298 (RK)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court on Timothy J.'s[1] ("Timothy" or "Plaintiff") appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying Timothy's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court **AFFIRMS** the Commissioner's decision.

## I. BACKGROUND

In this appeal, the Court must answer the following question: Did Administrative Law Judge ("ALJ") John Campbell ("the ALJ" or "Judge Campbell") properly analyze, with substantial evidence, Timothy's residual functional capacity ("RFC") under the Social Security Act?

### A. Procedural Posture

On July 21, 2023, Timothy protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of June 12, 2022. (Administrative Record

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

("AR") at 92–93.)[2] Timothy was 43 years old as of his alleged onset date and 44 years old when he filed his application. (*Id.* at 93.) The Social Security Administration (the "Administration") denied the requests both initially, (*id.* at 92–103), and on reconsideration, (*id.* at 104–14). Thereafter, Timothy requested a hearing before an ALJ. (*Id.* at 130–31.) On August 4, 2025, Timothy, who was represented by counsel, and Robert Baker, a Vocational Expert ("VE"), testified at a hearing before Judge Campbell. (*Id.* at 43–91.) On August 22, 2025, Judge Campbell issued a written decision finding Timothy not disabled. (*Id.* at 17–32.) The Administration's Appeals Council denied Timothy's request to review Judge Campbell's decision. (*Id.* at 1–6.) This appeal followed. (ECF No. 1.) The Administrative Record was filed on January 30, 2026. (ECF No. 4.) Timothy then filed his moving brief, ("Pl. Br.," ECF No. 9), the Commissioner filed an opposition, ("Opp.," ECF No. 11), and Timothy replied, ("Reply," ECF No. 12).

### B. JUDGE CAMPBELL'S DECISION

In his August 22, 2025 decision, Judge Campbell held that Timothy was not disabled under the prevailing Administration regulations. (*See* AR at 17–32.) To reach this conclusion, Judge Campbell analyzed Timothy's application under the five-step process for determining whether an individual is disabled, as set forth in 20 C.F.R. § 404.1520(a)(4).

At Step One, Judge Campbell found that Timothy had not engaged in substantial gainful activity during the relevant period, that is, "from his alleged onset date of June 12, 2022, through his date last insured of September 30, 2024." (AR at 19 (citing 20 C.F.R. § 404.1571 et seq.).)

At Step Two, Judge Campbell found that Timothy suffers from the following severe impairments: rheumatoid arthritis, anxiety disorder, cervical and lumbar degenerative disc disease,

[2] The AR is docketed at ECF Nos. 4-1 through 4-14. This Opinion will reference only page numbers in the record without the corresponding ECF numbers.

depressive disorder, bipolar disorder, "residuals from torn right rotator cuff," post-traumatic stress disorder, arthritis of the left foot and bilateral knees, attention deficit hyperactivity disorder, inflammatory bowel disease, and hernias. (*Id.* (citing 20 C.F.R. § 404.1520(c)).) Judge Campbell concluded that these severe impairments "cause more than a minimal limitation" on Timothy's ability to perform work activities. (*Id.* (citing SSR 85-28, 1985 WL 56856 (Jan. 1, 1985)).) Judge Campbell also found that Timothy has non-severe "nasolacrimal duct obstruction and sinusitis." (*Id.* at 20.) He explained that, while Timothy "ha[d] a history of right nasolacrimal duct obstruction and recurrent sinusitis," a procedure in December of 2021 (i.e., before Timothy's alleged onset date) appeared to have "effectively controlled" the impairments, as Timothy had not required any follow-up treatment in the time since the procedure and he reported no ongoing issues. (*Id.* (citing AR at 490, 492, 498).) Because no record evidence supported that Timothy's blocked tear duct or sinusitis had more than a minimal limitation on Timothy's ability to perform work-related activities, Judge Campbell found these impairments non-severe.[3] (*Id.*)

At Step Three, Judge Campbell determined that Timothy did not have an impairment or combination of impairments that qualifies under the Administration's listed impairments, set out in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").[4] (*Id.* (citing 20 C.F.R. §§ 404.1520(d), .1525, .1526).)

---

[3] As elaborated upon below, Judge Campbell accounted for Timothy's non-severe nasolacrimal duct obstruction and sinusitis by limiting Timothy to "occasional exposure to atmospheric conditions . . . such as dust, mists, gases, odors, fumes, pulmonary irritants, eye irritants, and poor ventilation" as part of his RFC. (AR at 23.) The Court addresses this limitation, and Timothy's challenge thereto, in Section III.C.

[4] Judge Campbell considered, but found inapplicable, the Listings for four physical impairments ("disorders of the skeletal spine resulting in compromise of a nerve root," "abnormality of a major joint in any extremity," inflammatory bowel disease, and inflammatory arthritis) and four mental impairments ("depressive, bipolar and related disorders," "anxiety and obsessive-compulsive disorders," "neurodevelopmental disorders," and "trauma- and stressor-related disorders"). (AR at 20–23 (citing Listings §§ 1.15, 1.18, 5.06, 12.04, 12.06, 12.11, 12.15, 14.09).) These findings are unchallenged on appeal.

As a precursor to Step Four, Judge Campbell concluded, based on "careful consideration of the entire record," that Timothy had the residual functional capacity to perform "light" work, *see* 20 C.F.R. § 404.1567(b), but that any job he performs should be limited in specified ways:

> [Timothy] can occasionally climb ramps and stairs, never climb ropes, ladders, or scaffolding, cannot work at unprotected, or exposed heights, around exposed moving mechanical parts, or with dangerous heavy machinery or equipment such as that which cuts, tears, crushes, shears, or punctures in its operations, can occasionally balance as defined in the SCO, occasionally stoop, kneel, crouch, and crawl, can frequently finger, handle, and reach bilaterally, can tolerate occasional exposure to atmospheric conditions as defined in the SCO companion to the DOT, such as dust, mists, gases, odors, fumes, pulmonary irritants, eye irritants, and poor ventilation. The claimant can understand, remember, and carry out simple instructions, can occasionally adjust to changes in workplace routines, can frequently interact with supervisors and coworkers, occasionally interact with the public, and requires ready access to a restroom, which I define as the restroom being on the same floor as the site of the work.

(AR at 23.) In making this RFC finding, the ALJ considered Timothy's subjective statements, the objective medical evidence and other medical evidence, and the medical opinions and prior administrative medical findings ("PAMFs") in the record. (*Id.* at 23–30.)

As relevant here, Judge Campbell considered the medical opinions of two of Timothy's treating physicians: his rheumatologist Dr. Richard Haddad, MD, and his gastroenterologist Dr. Amy Tilara, MD.[5] (*Id.* at 29; *see id.* at 870–75 (Dr. Haddad's RFC questionnaire form), 940–46 (Dr. Tilara's RFC questionnaire form).) As Judge Campbell explained, Dr. Haddad opined that

[5] Because Timothy challenges Judge Campbell's findings as to Drs. Haddad and Tilara, the Court focuses on those opinions hereinabove. (*See* Pl. Br. at 10–19.) The Court notes, however, that Judge Campbell also analyzed the opinion of Timothy's treating therapist Adrienne Wert, LCSW, and the PAMFs in the record. (AR at 28–30 (citing AR at 93–103, 105–14, 933–39).) He found Ms. Wert's opinion "poorly supported by her treatment notes," inconsistent with other medical records and with the "minimal amount of mental health treatment notes in the record," and ultimately unpersuasive. (*Id.* at 28 (citing AR at 825–27, 933–39, 949).) In contrast, he found the PAMFs of the state agency medical and psychiatric consultants "generally persuasive," as they were "supported by the medical evidence reviewed at the time of their creation" and consistent with the treatment notes of Timothy's providers and with the consultative psychiatric examination findings of record. (*Id.* at 29–30 (citing AR at 93–103, 105–14, 825–27, 949, 1178, 1204).)

Timothy can lift or carry 10 pounds "occasionally" (and less than 10 pounds "frequently"); can sit and "stand/walk" for fewer than 2 hours each in an 8-hour workday; "would need to alternate between sitting, standing or walking at will"; "would need unscheduled breaks every 2 hours"; and "would likely be absent from work more than 4 days per month." (*Id.* at 29 (citing AR at 872–74).) Dr. Haddad further opined that Timothy would need to elevate his legs when sitting for a "prolonged" period; could "rarely" twist, stoop, crouch, or climb stairs; and could use his hands, fingers, and arms each for 10% of the workday. (*Id.* at 873–74.) Dr. Tilara, Timothy's gastroenterologist, opined that Timothy can sit and "stand/walk" for fewer than 2 hours each in an 8-hour workday; "occasionally" look down, turn his neck side to side, or climb stairs; "rarely" look up, twist, stoop, or crouch/squat; and never climb ladders. (*Id.* at 29 (citing AR at 940–46).) Dr. Tilara further opined that Timothy was "incapable of even low stress jobs," (*id.*), because he "spends up to 5 hours in [the] bathroom daily," (*id.* at 943).

Judge Campbell found the opinions of Drs. Haddad and Tilara unsupported by their own treatment and exam notes, inconsistent with other treating physicians' treatment notes of record, and ultimately unpersuasive. (*Id.* at 29 (citing AR at 848, 874, 932, 940–46, 1178, 1204).) Judge Campbell first noted, in response to Dr. Tilara offering opinions about Timothy's exertional, postural, and manipulative limitations, that "Dr. Tilara is [Timothy's] gastrointestinal [("GI")] doctor who only treated [Timothy's] GI issues, not any of his musculoskeletal or rheumatic conditions." (*Id.*) He then found Dr. Tilara's opinion "not well supported by her exam notes which document that the claimant was in no acute distress, had soft abdomen with positive bowel sounds, and no tenderness," and similarly found Dr. Haddad's opinion "not well supported by his treatment notes which did not document any abnormal findings other than tenderness." (*Id.* (citing AR at

848); *see id.* at 24–27 (reviewing Dr. Haddad's treatment records, then Dr. Tilara's treatment records).)

Judge Campbell also compared both treating physicians' opinions with the treatment notes of Timothy's orthopedic surgeons, Dr. Gino Chiappetta, MD, and Dr. Patrick Buckley, MD. (*Id.* at 29 (citing AR at 1178, 1204).) Judge Campbell highlighted that Dr. Chiappetta, who had performed Timothy's cervical discectomy and fusion in June of 2023, found "5/5 strength in the upper extremities, normal sensation, and no muscle spasm" when he physically examined Timothy. (*Id.* (referencing AR at 1204–05).) The ALJ likewise pointed to Dr. Buckley's similar physical examination findings (in November of 2024, two months after Dr. Buckley performed Timothy's right-knee meniscus repair) of "normal pain free range of motion, 5/5 strength, and non-antalgic gait."[6] (*Id.* (referencing AR at 1178–80).) In addition to these representative physical examination findings, Judge Campbell detailed the medical records pertaining to Timothy's arthritic and musculoskeletal conditions, which "repeatedly indicated" that Timothy had "5/5 strength, normal range of motion and no sensory deficits" and showed that, after the surgeries by Drs. Chiappetta and Buckley, "[Timothy's] functional abilities substantially improved." (*Id.* at 26; *see id.* at 24–26.)

Also as part of his RFC determination, Judge Campbell considered Timothy's alleged bathroom needs resulting from his GI impairments. (*Id.* at 24, 26–27, 29–30.) The ALJ observed that "there [was] very little evidence of these impairments in the record" and that Timothy's reported need to spend five hours a day in the bathroom was "not documented anywhere in [his] treatment notes." (*Id.* at 26–27.) Based upon the sparse record evidence—including, as mentioned

[6] "An antalgic gait is, generally, a gait abnormality where an individual favors certain motions to avoid pain." *Lambertson v. Astrue*, 625 F. Supp. 2d 160, 163 n.4 (D. Del. 2009).

*supra*, Dr. Tilara's exam notes documenting "no acute distress," "soft abdomen with positive bowel sounds," and "no tenderness"—Judge Campbell found it sufficient to "require ready access to a restroom," defined as "the restroom being on the same floor at the site of the work," as part of Timothy's RFC formulation. (*Id.* at 23, 29–30; *see id.* at 26–27 (citing AR at 545, 576, 774, 846, 848, 854).)

At Step Four, Judge Campbell concluded that Timothy has no past relevant work. (*Id.* at 30 (citing 20 C.F.R. § 404.1565).) Before turning to Step Five, the ALJ noted that Timothy was 46 years old on his date last insured, that Timothy has at least a high school education, and that "[t]ransferability of job skills is not an issue because [Timothy] does not have past relevant work." (*Id.* (citing 20 C.F.R. §§ 404.1563, .1564, .1568).)

Finally, at Step Five, Judge Campbell found that, "[t]hrough the date last insured, considering [Timothy's] age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Timothy] could have performed," including marker, mail clerk, and router. (*Id.* at 30–31 (citing 20 C.F.R. §§ 404.1569, .1569a).) Judge Campbell accordingly concluded that Timothy was not under a disability from his alleged onset date of June 12, 2022, through September 30, 2024. (*Id.* at 31 (citing 20 C.F.R. § 404.1520(g)).) This appeal followed.

## II. LEGAL STANDARD

### A. Standard of Review

The Court reviews the "final decision of the Commissioner of Social Security" to determine whether the Commissioner's findings are "supported by substantial evidence." 42 U.S.C. § 405(g). If the Appeals Council denies a claimant's request for review, "the ALJ's decision is the Commissioner's final decision." *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). Substantial

evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Put differently, "[i]t means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 633 (3d Cir. 2010) (quoting *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003)). This evidentiary threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019).

The scope of the Court's review of the ALJ's decision is "quite limited." *Rutherford*, 399 F.3d at 552. On review, the Court may not "re-weigh the evidence or impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). "Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently." *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak,* 777 F.3d at 610 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706–07 (3d Cir. 1981) (citation omitted).

### B. ESTABLISHING ELIGIBILITY FOR DISABILITY INSURANCE BENEFITS

A claimant may establish disability under the Social Security Act by proving they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The ALJ applies a well-established "five-step sequential evaluation process," which requires considering whether the claimant:

> (1) is engaged in substantial gainful activity; (2) suffers from an impairment or combination of impairments that is "severe"; (3) suffers from an impairment or combination of impairments that meets or equals a listed impairment; (4) is able to perform his or him past relevant work; and (5) is able to perform work existing in significant numbers in the national economy.

*McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citing 20 C.F.R. §§ 404.1520(a)–(f)). The claimant bears the burden of proof at the first four steps, at which point it shifts to the Commissioner at Step Five. *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

## III. DISCUSSION

To support his request for remand under 42 U.S.C. § 405(g), Timothy challenges Judge Campbell's RFC determination at the precursor to Step Four. (Pl. Br. at 10–21.) He argues that Judge Campbell "erred in evaluating the persuasiveness of Dr. Haddad's opinion," (*id.* at 10; *see id.* at 10–16), and asserts that Judge Campbell's RFC determination "is not supported by substantial evidence, specifically Plaintiff's need for bathroom breaks and incapacity for dust exposure," (*id.* at 16; *see id.* at 16–21). Because "all other issues have been [forfeited]," the Court restricts its review to these arguments. *Torres v. Kijakazi*, No. 21-18424, 2023 WL 6890851, at *2 n.3 (D.N.J. Oct. 19, 2023) (collecting cases). For the following reasons, the Court affirms Judge Campbell's decision as substantially supported and properly explained.

### A. DR. HADDAD'S OPINION

In determining Timothy's RFC and finding him not disabled, Judge Campbell considered the medical opinion provided by Timothy's treating rheumatologist, Dr. Haddad. (AR at 29 (citing AR at 874).) Pursuant to 20 C.F.R. § 404.1520c, Judge Campbell explained that he found the

opinion unsupported, inconsistent, and thus unpersuasive. (*Id.*) Timothy takes issue with this analysis. (Pl. Br. at 10–16.)

Timothy first contends that Judge Campbell failed to address certain limitations included in Dr. Haddad's opinion. (*Id.* at 12–13.) Therein, as summarized by Judge Campbell, Dr. Haddad opined that Timothy "can lift/carry 10 pounds occasionally, less than 10 pounds frequently, can sit less than 2 hours, stand/walk less than 2 hours, would need to alternate between sitting, standing or walking at will, would need unscheduled breaks every 2 hours, and would likely be absent from work more than 4 days per month." (AR at 29; *see id.* at 872–74.) Timothy acknowledges that Judge Campbell found those opinions unpersuasive but asserts that the ALJ "does not articulate any evaluation" of certain other limitations included in Dr. Haddad's RFC questionnaire form. (Pl. Br. at 12.) He points to Dr. Haddad's opinions "that [Timothy's] legs would need to be elevated for prolonged sitting, that he could rarely twist, stoop, crouch, or climb stairs, and that he could use both hands, fingers and arms just ten percent of an eight-hour workday." (*Id.* (citing AR at 873–74).) Timothy argues that because Judge Campbell did not explain why these specific limitations "were or were not established into the RFC," his decision is not supported by substantial evidence. (*Id.* at 12; *see id.* at 12–13.)

However, "[t]he expectation of the ALJ is not that []he should separate each of these discrete subordinate opinions in evidence and either defend their rejection or specifically identify where they fit into the RFC determination." *Alley v. Kijakazi*, No. 21-1161, 2022 WL 14005134, at *1 n.2 (W.D. Pa. Oct. 24, 2022); *see* 20 C.F.R. § 404.1520c(b)(1) ("[ALJs] are not required to articulate how [they] considered each medical opinion or prior administrative medical finding from one medical source individually."). Instead, the ALJ need only explain the persuasiveness of a given medical opinion at the "[s]ource-level," 20 C.F.R. § 404.1520c(b)(1), rather than

exhaustively chronicling each limitation therein, and his explanation must "allow a subsequent reviewer or a reviewing court to trace the path of [his] reasoning," *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017); *see also Tricia W. v. Comm'r of Soc. Sec.*, No. 24-11499, 2025 WL 3033994, at *6 (D.N.J. Oct. 30, 2025) ("[B]ecause the regulations seek to enforce a 'source level' analysis, rather than dividing each source's opinions into different units to be separately analyzed, the ALJ need not perform a supportability and consistency analysis with regard to every aspect of the medical opinion." (cleaned up)). "In tracing this path, an ALJ 'must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence' . . . [but] 'is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice.'" *Tricia W.*, 2025 WL 3033994, at *6 (cleaned up) (first quoting *Tedesco v. Comm'r of Soc. Sec.*, 833 F. App'x 957, 961 (3d Cir. 2020); then quoting *Cotter*, 650 F.2d at 482). In short, with respect to medical opinions as with all evidence in the record, the ALJ need only "indicate that []he has considered all the evidence," support his conclusions with "such relevant evidence as a reasonable mind might accept as adequate," and give "some explanation of why []he rejected probative evidence." *Cotter*, 650 F.2d at 482; *Fargnoli v. Massanari*, 247 F.3d 34, 38, 41–43 (3d Cir. 2001); *see also Wilkinson v. Comm'r of Soc. Sec.*, 558 F. App'x 254, 256 (3d Cir. 2014) (explaining that, even when an ALJ finds a medical opinion persuasive, he need not incorporate every finding by that medical source into the RFC, and "it is not [the court's] role to 're-weigh the evidence of record and substitute [its] judgment as to whether [the claimant] is disabled'").

Judge Campbell's evaluation of Dr. Haddad's opinion satisfies these standards. As explained *supra*, Judge Campbell found Dr. Haddad's opinion inconsistent with "Dr. Chiappetta's

treatment notes which indicated that the claimant had 5/5 strength in the upper extremities, normal sensation, and no muscle spasm" and "Dr. Buckley's treatment notes which reported that the claimant had normal pain free range of motion, 5/5 strength, and non-antalgic gait." (AR at 29 (citing AR at 1178, 1204).) The ALJ spent two additional pages detailing the objective medical evidence and other medical evidence across 2022, 2023, and 2024 related to Timothy's arthritic, rheumatic, and musculoskeletal conditions, including the treatment notes, examination findings, and imaging results provided by Dr. Chiappetta, Dr. Buckley, and others. (*Id.* at 25–26 (citing AR at 550, 563–64, 576, 584, 586, 592, 596, 605, 678, 688, 694, 876, 883, 885, 890, 892, 894, 898, 967, 975, 977, 982, 1006, 1178, 1195, 1204, 1228, 130; referencing AR at 553, 567, 580, 597, 602–03, 891, 968, 983, 1007, 1178–80, 1205).) Judge Campbell summarized his assessment of the relevant record evidence, stating that "[t]reatment notes have repeatedly indicated that the claimant has 5/5 strength, normal range of motion and no sensory deficits" and, "[a]lthough [Timothy] has required surgeries on his right knee and neck, treatment notes document that afterwards, [Timothy's] functional abilities substantially improved." (*Id.* at 26.) Similarly, with respect to supportability, Judge Campbell explained that Dr. Haddad's opinion was "not well supported by his treatment notes which did not document any abnormal findings other than tenderness," (*id.* at 29), and he detailed those treatment notes as part of his RFC determination, (*id.* at 24–25 (citing AR at 586, 678, 688, 883, 885, 890, 892, 894, 898)).[7]

[7] Timothy elaborates on the "context" of the specific treatment notes cited within Judge Campbell's consistency explanation, asserting that Drs. Chiappetta and Buckley were "evaluat[ing] . . . [his] recent knee arthroscopy and cervical spine fusion." (Pl. Br. at 13; *see* AR at 29 (citing AR at 1178, 1204).) However, as Judge Campbell made clear and as shown herein, Timothy's treatment records "repeatedly indicated" similar examination findings. (AR at 26; *see id.* at 25–26 (citing and referencing AR at 550–53, 564–67, 576–80, 584–86, 596, 602–03, 967–68, 982–83, 1195, 1204–05).) Accordingly, to the extent Timothy contends the cited records are non-representative, such an argument is without merit. If anything, the context of Timothy's post-surgery recovery might explain *non*-normal examination findings during those appointments, had any been noted.

Judge Campbell's explanations for the RFC limitations he assigned and the exertional, break time, and absenteeism opinions he explicitly rejected equally explain the manipulative, postural, and leg elevation limitations he implicitly rejected.[8] *See Wilkinson*, 558 F. App'x at 256 (finding no error where ALJ "found that [Plaintiff] had the RFC to perform sedentary work, but did not expressly identify that he was subject to any postural or manipulative limitations," where ALJ "cited to other record evidence that was inconsistent with [the medical opinion's] finding of postural limitations, including medical reports that [Plaintiff] was doing well[] [and] had good leg and arm strength"); *Tina D. v. Kijakazi*, No. 22-84, 2023 WL 6842444, at *7 (D.N.J. Oct. 17, 2023) (finding that "the ALJ's discussion of the longitudinal record permit[ted] meaningful review and provide[d] substantial support for the ALJ's consideration of [the medical] opinion" such that any failure to discuss specific opined limitations did not render RFC erroneous). "Read as a whole, the decision permits the Court to discern why the ALJ credited some . . . limitations but rejected [others], and that is sufficient under the substantial-evidence standard." *Jennifer R. v. Comm'r of Soc. Sec.*, No. 25-14242, 2026 WL 1906758, at *13 (D.N.J. July 2, 2026); *see Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) (explaining that an ALJ may "weave supportability and consistency throughout [his] analysis of which doctors were persuasive").

Timothy's arguments to the contrary are unavailing. He emphasizes his physicians' different specializations—that "Drs. Buckley and Chiappetta treated Plaintiff's musculoskeletal

---

[8] (*See, e.g.*, AR at 25–26 (noting that in March 2023 Timothy reported "pain and stiffness in his left fingers, left elbow, left shoulder, left hip and neck lasting for 5 minutes in the morning" and exhibited "tenderness in the hands and ankles, but had normal range of motion"; explaining that in May 2023 Timothy reported "tenderness" and showed "painful, decreased range of motion in the cervical spine" but "admitted . . . that Rinvoq had provided relief of his arthritic symptoms" and exhibited "5/5 strength in the upper extremities," "no sensory deficits," and "normal range of motion"; observing that in July 2023 Timothy "reported that since his [cervical fusion] surgery, he no longer had left arm numbness[] [and] feels his range of motion is improving daily"; and noting that in November 2024 Timothy showed "painful range of motion in the cervical spine, but . . . had 5/5 strength in the upper extremities" and "normal pain free range of motion").)

disorders, while Dr. Haddad, a rheumatologist, focused on his rheumatoid arthritis"—but does not elaborate on why this difference matters or how it poses any problem for Judge Campbell's analysis.[9] (Pl. Br. at 14.) He then acknowledges that Dr. Chiappetta's treatment notes are relevant to the persuasiveness of Dr. Haddad's opinion, insofar as he argues they demonstrate consistency rather than inconsistency.[10] (*Id.*) Timothy similarly points to aspects of Dr. Haddad's treatment records that the ALJ supposedly overlooked, but Judge Campbell addressed that evidence in his decision.[11] (*Compare id.* at 15 (citing AR at 669–70, 869) (describing treatment records in which Dr. Haddad noted Timothy's complaints of "pain and stiffness in his fingers, wrists, elbows, shoulders, knees, ankles, toes, neck, and lower back" and provided Timothy with different

---

[9] The Administration regulations provide that a specialist's medical opinion "may be more persuasive about medical issues related to his or her area of specialty than the medical opinion . . . of a medical source who is not a specialist in the relevant area of specialty." 20 C.F.R. § 404.1520c(c)(4). Timothy offers no explanation for how Drs. Chiappetta and Buckley are "not . . . specialist[s] in the relevant area," and no such conclusion is obvious. Per Timothy's own description, "Drs. Buckley and Chiappetta treated Plaintiff's musculoskeletal disorders," (Pl. Br. at 14), and Dr. Haddad himself characterized Timothy's relevant symptoms as "musculoskeletal," (*see, e.g.*, AR at 678 (listing reported symptoms of "joint pain," "muscle tenderness," and "muscle weakness" under a heading for the "[m]usculoskeletal" system).) Moreover, while ALJs must "consider" specialization when evaluating medical opinions, they generally need not address it in their decisions. 20 C.F.R. § 404.1520c(b)(2)–(3), (c); *Zaborowski*, 15 F.4th at 639.

[10] Timothy argues that Dr. Chiappetta's treatment note "describ[ing] [Timothy] as a good candidate for cervical spine fusion . . . supports the limiting restrictions in Dr. Haddad's opinion, although the decision omits an analysis of this consistency." (Pl. Br. at 14 (citing AR at 1107).) However, Judge Campbell explicitly considered that Timothy underwent cervical spine fusion in 2023, accounted for Timothy's surgery history and post-surgery functional abilities in determining the RFC, and cited Timothy's post-surgery treatment records from Drs. Chiappetta and Buckley in his consistency analysis. (AR at 25–26 (citing AR at 550, 592, 596, 1007, 1195, 1205, 1307), 29 (citing AR at 1178, 1204); *see id.* at 26 ("Although [Timothy] has required surgeries on his right knee and neck, treatment notes document that afterwards, [his] functional abilities substantially improved. . . . The undersigned acknowledges that [Timothy] has some limitations from his physical impairments, which have been accounted for in his residual functional capacity, but does not find that any additional limitations are warranted.")); *see also supra* note 7.

[11] Timothy adds that "[t]enderness in the joints is part of [his] clinical presentation." (Pl. Br. at 15.) This is seemingly a response to Judge Campbell finding that Dr. Haddad's opinion was "not well supported by his treatment notes which did not document any abnormal findings other than tenderness." (AR at 29.) It goes without saying that Judge Campbell considered evidence of such tenderness. Timothy then asserts, without citation, that Judge Campbell "rejected [Dr. Haddad's] opinion without explaining what further support was necessary to lend Dr. Haddad's opinion persuasiveness," but the ALJ bears no such requirement or burden. (Pl. Br. at 15.)

treatments when one was ineffective), *with* AR at 25 (citing AR at 678, 885, 890–94) (describing treatment records in which Dr. Haddad noted Timothy's complaints of "chronic pain and stiffness in the left fingers, left elbow, left shoulder, left hip and neck lasting for 5 minutes in the morning" and provided Timothy with different treatments when one was ineffective).) "To the extent [Timothy] points to other evidence in the record that []he believes would support [Dr. Haddad's opined limitations], the Court 'will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the substantial evidence standard is satisfied.'" *Tina D.*, 2023 WL 6842444, at *8 (cleaned up) (quoting *Johnson v. Comm'r of Soc. Sec.*, 497 F. App'x 199, 201 (3d Cir. 2012)).

The Court thus finds no error in Judge Campbell's evaluation of Dr. Haddad's opinion, including his rejection of the specific opined limitations that Timothy highlights.

### B. BATHROOM BREAKS & DR. TILARA'S OPINION

Timothy next argues that Judge Campbell erred by including an RFC limitation for "mere *access* to a bathroom" without an off-task time limitation despite his treating gastroenterologist's opinion that he "spends up to 5 hours in [the] bathroom daily." (Pl. Br. at 17; AR at 943.) Timothy asserts that the ALJ failed to specifically address Dr. Tilara's restroom-usage statement and that his explanation for rejecting other aspects of Dr. Tilara's opinion does not explain his rejection of that statement. (*See* Pl. Br. at 17–18.) For similar reasons as set forth hereinabove, the Court rejects these arguments.

As explained, it is well established that ALJs have no obligation to address each individual limitation or statement included in a medical opinion. *See* 20 C.F.R. § 404.1520c(b)(1). An ALJ need only "articulate how [he] considered the medical opinions . . . from [a] medical source together in a single analysis" based on that source's consistency and supportability, *id.*, and

"provide a 'logical bridge' between the evidence and [his] conclusions," *Peter G. v. Comm'r of Soc. Sec.*, No. 23-3797, 2024 WL 3518117, at *9 (D.N.J. July 24, 2024) (alteration in original). "The expectation of the ALJ is not that she should separate each of these discrete subordinate opinions in evidence and either defend their rejection or specifically identify where they fit into the RFC determination. What the substantial evidence standard demands is that the ALJ thoroughly reviewed the evidence such that the Court has no reason to think the RFC does not reflect all of Plaintiff's impairments." *Alley*, 2022 WL 14005134, at *1 n.2 (citations omitted); *see also Haun v. Comm'r of Soc. Sec.*, No. 15-71, 2016 WL 362258, at *9 (W.D. Pa. Jan. 29, 2016) (finding "no error in the ALJ's implicit rejection" of a "particular" opined limitation where "the ALJ relied on ample other evidence besides [the medical opinion] in formulating the RFC"); *Joanne H. v. O'Malley*, No. 21-20092, 2024 WL 139505, at *9 (D.N.J. Jan. 10, 2024).

Timothy is correct that Judge Campbell expressly rejected Dr. Tilara's opined limitations regarding standing, walking, sitting, climbing, and stooping because such limitations "were outside of her expertise as a gastroenterologist" and inconsistent with physical examination findings documented by Drs. Chiappetta and Buckley such as "5/5 strength" and "normal pain free range of motion." (Pl. Br. at 17; AR at 29 (citing AR at 940–46, 1178, 1204).) Timothy argues that "this reasoning does not apply to Dr. Tilara's opinion about [his] need for time off-task due to bathroom breaks" and "the decision does not contain any evaluation of Dr. Tilara's opinion about Plaintiff's need for bathroom breaks."[12] (Pl. Br. at 17.) However, Judge Campbell's reasoning did not end there.

[12] In his Reply, Timothy goes further, stating that "[t]he ALJ's rejection of Dr. Tilara's opinion depends on the treating source's specialization." (Reply at 3.) This is a mischaracterization. Even with respect to Dr. Tilara's opined exertional and postural limitations, Judge Campbell did not "depend[] on" specialization as

In particular, Judge Campbell explained that "Dr. Tilara's opinion is not well supported by her exam notes which document that the claimant was in no acute distress, had soft abdomen with positive bowel sounds, and no tenderness." (AR at 29 (citing AR at 848).) He likewise underscored that that the record contained "very little evidence" of Timothy's claimed GI impairments, observed that Timothy "d[id] not take any consistent medications for these conditions," and summarized that "[a] thorough review of the record reveals that [Timothy] has sought treatment for his GI only sporadically, with large gaps in the record with no evidence of any medical treatment." (*Id.* at 26–27 (reviewing sparse record evidence of Timothy's GI impairments, including notes from March 2023 appointment at which Timothy "reported that he has celiac disease which causes chronic diarrhea" and results of a September 2023 EGD/upper GI biopsy which "revealed mild chronic inflammation of the gastric mucosa" (citing AR at 545, 576)).) Judge Campbell specifically found that Timothy's subjective statement that he "spends up to 5 hours per day in the restroom"—like Dr. Tilara's statement of the same—was "not documented anywhere in [his] treatment notes"—including not in Dr. Tilara's treatment notes. (*Id.* at 27; *see id.* at 26–27 (citing AR at 846, 854).) Finally, Judge Campbell included an RFC limitation for "ready access to a restroom . . . on the same floor as the site of the work." (*Id.* at 23; *see id.* at 27.) The Court thus disagrees that Judge Campbell "did not explain why [the opined limitation] was not persuasive" and "omitt[ed] any analysis of Plaintiff's need for bathroom breaks," (Pl. Br. at 18),[13] and finds

his reason for rejection. He highlighted the discrepancy between Dr. Tilara's specialty and her opined limitations about Timothy's "musculoskeletal or rheumatic conditions" and then explained that Dr. Tilara's opinions were unsupported by her treatment notes and inconsistent with findings by Timothy's orthopedic surgeons. (AR at 29.)

[13] Judge Campbell also expressly addressed Dr. Tilara's opinion that Timothy "was incapable of even low stress jobs." (AR at 29.) This opinion and Dr. Tilara's statement regarding Timothy's bathroom usage were one and the same. In response to the question, "To what degree can your patient tolerate work stress? . . . Please explain the reasons for your conclusion," Dr. Tilara selected the answer choice that Timothy was

the foregoing explanations more than sufficient to support Judge Campbell's rejection of Dr. Tilara's bathroom-usage statement.

As before, Timothy counters with evidence he says is supportive of and consistent with Dr. Tilara's opinion. (*Id.*) This evidence—such as his September 2023 GI biopsy showing "mild chronic inflammation of . . . gastric mucosa," his November 2023 gallbladder removal with hernia repair, and his own statements—is evidence the ALJ considered. (*See id.* (citing AR at 74 (Plaintiff's testimony), 730 (treatment record related to surgery), 829 (treatment record related to GI biopsy)); AR at 26–27 (citing AR at 545 (treatment record related to GI biopsy), 576 (treatment record containing Plaintiff's subjective statements), 774 (treatment record related to surgery); referencing AR at 74 (Plaintiff's testimony).) Judge Campbell's consideration of the same evidence Timothy cites demonstrates that, contrary to Timothy's assertions, the ALJ properly explained and supported his rejection of Dr. Tilara's opined restroom-usage limitation. Furthermore, even contrary evidence does not warrant remand where, as here, substantial evidence supports the ALJ's decision. *See Diego H. v. Bisignano*, No. 23-3870, 2025 WL 2058144, at *6 (D.N.J. July 23, 2025) ("Notably, even if Plaintiff points to evidence that he believes undermines the ALJ's evaluation, so long as the ALJ satisfies the substantial evidence standard, the Court will uphold the ALJ's decision even if contrary evidence exists that could justify the opposite conclusion." (citing *Johnson*, 497 F. App'x at 201)); *Brown v. Kijakazi*, No. 21-89, 2022 WL 4338279, at *1 n.2 (W.D. Pa. Sept. 19, 2022) ("While the evidence could have been found to support an off-task time limitation in the RFC, the mere possibility of that alternative conclusion does not undermine the ALJ's well-supported RFC formulation. . . . The ALJ thoroughly

---

"[i]ncapable of even 'low stress jobs'" and filled in the blank with the statement that he "spends up to 5 hours in [the] bathroom daily." (*Id.* at 943.)

considered that evidence and simply found no further limitations than those he included in the RFC had been established."); *Joanne H.*, 2024 WL 139505, at *9 ("Plaintiff's argument [regarding contrary evidence] boils down to simply a disagreement with the ALJ. The Court therefore declines Plaintiff's invitation to re-weigh the evidence or to impose her—or this Court's—own factual determination.").

Finally, the Court notes the conclusory nature of Dr. Tilara's bathroom-usage statement. Dr. Tilara simply stated that Timothy "spends up to 5 hours in [the] bathroom daily." (AR at 943.) She did not, as Timothy contends, give an "opinion about [Timothy's] need for time off-task due to bathroom breaks." (Pl. Br. at 17); *see Alley*, 2022 WL 14005134, at *1 n.2 (explaining that opined moderate limitations did not "obviously support a specific functional limitation that the ALJ failed to include in the RFC, *i.e.*, neither [medical source] opined Plaintiff would be absent or late to work a particular number of days" or "off-task a certain percentage of the day"); *see also* 20 C.F.R. § 404.1513(a)(2) (providing that an "opinion" by a medical source describes what a claimant can still do despite his impairments). In fact, on the very next page, Dr. Tilara opined that Timothy would *not* need unscheduled breaks during an 8-hour workday. (AR at 944.) She instead described Timothy's bathroom usage as the reason he could not handle "low stress jobs," (*id.* at 943); *see supra* note 13, although she provided no explanation or supporting evidence for the statement, *see Hale v. Kijakazi*, No. 22-14, 2023 WL 2573387, at *1 n.2 (W.D. Pa. Mar. 20, 2023) ("The ALJ only briefly addressed supportability, but that is not unexpected as [the medical source's] opinions were rendered largely without accompanying explanations."); *Tina D.*, 2023 WL 6842444, at *7 (collecting cases).

In sum, Judge Campbell deemed Dr. Tilara's restroom-usage statement unsupported by her treatment records (which nowhere documented such frequent restroom usage), inconsistent with

other record evidence (the "very little evidence" of Timothy's GI impairments with "only sporadic[]" treatment and no "consistent medications" for these impairments), and thus unpersuasive. (AR at 26–27, 29.) Notwithstanding Dr. Tilara's unpersuasive and conclusory statement, Judge Campbell included an RFC limitation related to restroom usage. (*Id.* at 23.) The Court thus disagrees that Judge Campbell "did not explain why [the opined limitation] was not persuasive" and "omitt[ed] any analysis of Plaintiff's need for bathroom breaks." (Pl. Br. at 18.) Instead, as shown, he both adequately explained and substantially supported his rejection of Dr. Tilara's restroom-usage statement.

### C. Exposure to Atmospheric Conditions

Finally, Timothy challenges Judge Campbell's RFC finding that he "can tolerate occasional exposure to atmospheric conditions . . . such as dust, mists, gases, odors, fumes, pulmonary irritants, eye irritants, and poor ventilation." (AR at 23; Pl. Br. at 19–21.) Relying on SSR 85-15, 1985 WL 56857 (Jan. 1, 1985), Timothy argues that Judge Campbell erred by framing his exposure limitation in terms of frequency ("occasional" exposure) as opposed to "concentration or volume" (such as "very little" or "excessive" amounts of these atmospheric conditions). (Pl. Br. at 20.) He asserts that, "[i]nterpreted literally," this RFC limitation could be read to preclude "occasional" exposure to "*any amount* of dust or humidity"—and that all workplaces contain "some" amount of atmospheric conditions, such that he would be limited to "very few job environments," not necessarily including the jobs the ALJ found him capable of performing. (*Id.* at 20–21.)

For starters, SSR 85-15 does not control here. It "clarifies policies applicable in cases involving the evaluation of solely nonexertional impairments," and Judge Campbell found that Timothy had both exertional and nonexertional impairments through his date last insured. SSR 85-

15, 1985 WL 56857, at *2; (AR at 19–20, 23); *see Snyder v. Colvin*, No. 15-1510, 2017 WL 952392, at *13 (M.D. Pa. Mar. 10, 2017) (finding no error where ALJ "fail[ed] to apply SSR 85-15" because "the ALJ found . . . that [Plaintiff] suffers from a combination of exertional and nonexertional impairments" and "[t]he use of the medical vocational rules as a framework for evaluating a combination of exertional and nonexertional impairments is discussed in SSR 83-14," not SSR 85-15); *Williams v. Colvin*, No. 15-1743, 2015 WL 7740412, at *5 & n.3 (C.D. Cal. Nov. 30, 2015).

Furthermore, even assuming SSR 85-15 is relevant to the extent it "contains *guidance* on the effect of environmental restrictions on *a worker's* occupational base," it does not, as Timothy contends, require atmospheric conditions limitations to be stated in terms of "amount." (Pl. Br. at 19 (emphasis added).) The policy statement "address[es] certain examples of nonexertional impairments"—including mental impairments, hearing and visual impairments, and "environmental restrictions"—and "comment[s] on their impact on the occupational base." *Allen v. Barnhart*, 417 F.3d 396, 405 (3d Cir. 2005); SSR 85-15, 1985 WL 56857, at *4–8; *see* SSR 85-15, 1985 WL 56857, at *1, *8 (explaining that SSR 85-15 "provide[s] a framework" for disability determinations where a claimant has only "nonexertional limitation(s)" or "environmental restriction(s)" and stating that the impact on ability to work would be "considerable" for someone who can tolerate "very little . . . dust" and "minimal" for someone who must "avoid excessive amounts of . . . dust"). It does not govern RFC formulations, tolerable exposure levels, or the like. *See, e.g.*, 20 C.F.R. § 404.1545 (providing simply that, with respect to "impairment(s) which impose environmental restrictions," ALJs "consider any resulting limitations and restrictions which may reduce [the claimant's] ability to do past work and other work in deciding [the claimant's] residual functional capacity").

Meanwhile, the relevant sources used by the Administration in disability determinations—that is, the Dictionary of Occupational Titles ("DOT") and the DOT's "companion publication," the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO")—rate the presence of environmental conditions in a given occupational setting according to "frequency." SCO App. D; *see Williams*, 2015 WL 7740412, at *5; *see also Tracey v. Comm'r of Soc. Sec.*, 760 F. App'x 121, 123 (3d Cir. 2019) (explaining that ALJs "rely primarily" on the DOT and SCO in making disability determinations (quoting SSR 00-4p, 2000 WL 1898704 at *2 (Dec. 4, 2000))); 20 C.F.R. § 404.1566(d)(1). Atmospheric conditions such as "fumes, noxious odors, dusts, mists, gases, and poor ventilation" are rated as "not present," "occasionally" present (defined as "exist[ing] up to 1/3 of the time"), "frequently" present ("exist[ing] from 1/3 to 2/3 of the time"), or "constantly" present ("exist[ing] 2/3 or more of the time").[14] SCO App. D; (*see* AR at 23 (setting forth in Timothy's RFC that he "can tolerate occasional exposure to atmospheric conditions as defined in the SCO companion to the DOT")). In turn, when Judge Campbell presented the VE with Timothy's RFC during the administrative hearing, including the limitation to "occasional" exposure to atmospheric conditions, the VE testified based on the DOT and SCO that representative occupations such as marker, mail clerk, and router could still be performed.[15] (AR at 84–85; *see id.* at 23.)

---

[14] Timothy does not acknowledge that the DOT itself rates the presence of environmental conditions according to frequency.

[15] It appears that the VE's testimony on the subject and his consultation of the foregoing materials would satisfy SSR 85-15 even assuming that the "occasional" exposure limitation "falls between very little and excessive," and even assuming this would be of consequence, i.e., assuming that SSR 85-15 applied to this case and required exposure limitations to be stated in terms of amount. *See* SSR 85-15, 1985 WL 56857, at *8 ("Where [a claimant's] environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [vocational specialist].").

In fact, all three occupations that the ALJ identified as jobs Timothy could perform, based on his RFC and the testimony of the VE, are jobs with *no* exposure to atmospheric conditions. *See* Marker, DOT § 209.587-034, 1991 WL 671802 (Jan. 1, 2016) ("Atmospheric Cond[itions]: Not Present - Activity or condition does not exist"); Mail Clerk, DOT § 209.687-026, 1991 WL 671813 (Jan. 1, 2016) (same); Router, DOT § 222.587-038, 1991 WL 672123 (Jan. 1, 2016) (same). How Judge Campbell framed this RFC limitation is thus of no moment, and the same jobs would remain available even if he had limited Timothy to avoiding all exposure to such conditions. "Federal Courts around the country have found error, if any, to be harmless where, as here, the DOT job descriptions revealed the jobs have no exposure to atmospheric conditions or other pulmonary irritants." *Halle v. Comm'r of Soc. Sec.*, No. 25-20, 2026 WL 1855544, at *5–6 (W.D. Pa. June 29, 2026) (collecting cases); *see also id.* at *6 ("Courts have consistently held that failing to consider asthma or exposure to atmospheric conditions is a harmless error where the job itself has no exposure.").

The crux of Timothy's argument appears to be that "workplaces contain some amount of dust or humidity," so "a worker who could tolerate only occasional exposure to dusts, odors, fumes or gases could, at most, perform full-time work in . . . 'very few job environments,'" and Judge Campbell did not explain how the aforementioned jobs "[took] place in environments without the potential to trigger" his symptoms. (Pl. Br. at 20–21 (quoting SSR 85-15, 1985 WL 56857, at *8).) However, "the reality is [the] DOT has found that those jobs have no atmospheric conditions present." *Halle*, 2026 WL 1855544, at *6 (rejecting plaintiff's argument that a "'reasonable mind' could assume that a Fast-Foods Worker or a Cafeteria Attendant could be exposed to pulmonary irritants in the kitchen, and a Ticket Marker could be exposed to pulmonary irritants from cars or pollen" and explaining that, "[w]hile that may potentially be the case," the DOT job descriptions

state no such exposure is present); *see Frye v. Berryhill*, No. 16-543, 2017 WL 3242259, at *6 (M.D.N.C. July 28, 2017) (rejecting similar argument where the DOT's description of job "clearly states that 'atmospheric conditions' are 'not present'"). To the extent Timothy means to challenge the descriptions contained in the DOT and SCO, any such argument is unavailing, given the presumptive validity of these sources. *See Halle*, 2026 WL 1855544, at *6 ("The DOT 'remains an appropriate source of occupational data' and it is acceptable for the ALJ and the vocational expert to rely on it. Therefore, any argument to the contrary is unpersuasive for purposes of this appeal." (citations omitted) (collecting cases)); *Norabeth D. v. Kijakazi*, No. 21-12874, 2022 WL 2952913, at *9 (D.N.J. July 26, 2022) ("'[T]he DOT remains an appropriate source of occupational data.' . . . The ALJ's reliance on the DOT is thus presumptively justified."); *Sanabria v. Comm'r of Soc. Sec.*, No. 15-8963, 2017 WL 436253 (D.N.J. Jan. 31, 2017) ("Although Plaintiff may disagree with the relevance of the [DOT] in the modern-day work force, 'the DOT remains an appropriate source of occupational data.'" (alteration in original)).

Accordingly, for the foregoing reasons, the Court is not persuaded that Judge Campbell's formulation of Timothy's exposure limitation was in error, nor would it ultimately be of any moment given that each identified occupation is defined as involving no exposure to atmospheric conditions, regardless of how such exposure is measured.

## CONCLUSION

Having reviewed the record as a whole, the Commissioner's decision is **AFFIRMED**. An appropriate Order follows.

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: November 20, 2026